## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

BRANDON CRAIG,
*individually and on behalf of others
similarly situated,*

      Plaintiffs,

v.

RED OAK SANITATION, LLC, RED
OAK SANITATION, INC., SHERYL
LYNN LUCE, and ANTHONY J.
GRUTADAURIO,

      DEFENDANTS.

CIVIL ACTION NO.

2:24-cv-00212-RWS

## CONSENT MOTION TO APPROVE SETTLEMENT,
## TO CONDITIONALLY CERTIFY THE COLLECTIVE ACTION FOR
## SETTLEMENT PURPOSES ONLY,
## AND TO DISMISS WITH PREJUDICE

Plaintiff Brandon Craig ("Plaintiff"), on behalf of himself and others

similarly situated, along with the consent of Defendants Red Oak Sanitation, LLC,

Red Oak Sanitation, Inc., Sheryl Lynn Luce, and Anthony J. Grutadaurio

("Defendants") ("Plaintiff and "Defendants" are collectively referred to as the

"Parties") respectfully request that this Court approve the Parties' settlement of

Plaintiff's claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §

201, *et seq.* ("FLSA"), for unpaid overtime compensation, liquidated damages,

attorneys' fees, reasonable expenses of litigation, and other authorized relief under the FLSA. The Parties reached a settlement to resolve claims raised in this proceeding on behalf of a putative collective after investigating and mediating the claims.  The terms of the Parties' settlement is set forth in the Collective Action Settlement Agreement and Release ("Settlement Agreement"), which is attached here as **<u>Exhibit 1</u>** for the Court's review.

The Parties agree that the terms reflected in the Settlement Agreement are mutually satisfactory and represent a fair and reasonable compromise of the disputed claims that were asserted in this action and are in the best interests of the Parties. Accordingly, Plaintiff, with Defendants' consent, hereby submit the Settlement Agreement for approval by the Court, pursuant to *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982), and respectfully request that the Court enter the Proposed Order: (1) approving the Parties' Settlement Agreement; (2) dismissing this action with prejudice; and (3) retaining jurisdiction over this case to enforce the Parties' Settlement Agreement until payment of the settlement proceeds are received by Plaintiff, Opt-in Plaintiffs, and the Qualified Collective Members, and their counsel.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff is a former Driver employed by Defendants. This case was litigated

and mediated on behalf of a total of Drivers, Helpers, and/or similarly titled purported employees of Defendants who were paid on a purported day rate plan ("Putative Collective Members"). Prior to mediation, James Hardison, Cody Adams, Michael Dorry, Angelo Margino, and Wesley Taylor Sexton ("Opt-In Plaintiffs") opted into this lawsuit.

Plaintiff filed his Collective Action Complaint on September 17, 2024. The Parties entered into a tolling agreement on behalf of the Putative Collective Members on October 2, 2024, and requested the Court extend the time for Defendants to answer or otherwise respond to the Complaint in order for Defendant to investigate the claims and explore a possible resolution on behalf of the entire putative collective. The Court entered an Order extending the responsive pleading deadline in the case on October 4, 2024.  The Parties entered into an Amended Tolling Agreement on or about November 20, 2024.  Plaintiff contends that he, along with the Opt-in Plaintiffs and the Putative Collective Members, were improperly paid under the FLSA, and Defendants deny same. Plaintiff defined the putative collective as follows in the initial Collective Action Complaint:

> All persons who perform(ed) waste collection work for DEFENDANTS as non-exempt day rate or salaried employees, including, but not limited to, all Drivers, Helpers, laborers, and/or other similar job titles or designations out of any office in the United States at any time within three (3) years of filing this Collective Complaint or who are currently employed by DEFENDANTS.

(Dkt 1, Collective Action Complaint). As part of the settlement, the PARTIES agreed that the collective definition shall be redefined as follows if approved by this Court:

> All persons who were compensated using Red Oak's day rate pay structure in place before January 31, 2025 and perform(ed) waste collection work for Defendants as non-exempt day rate or salaried employees, including, but not limited to, all Drivers, Helpers, and/or other similar job titles or designations out of any office in the United States at any time within three (3) years of the filing this Collective Complaint or who are currently employed by Defendants.

In that regard, Plaintiffs have filed contemporaneously with this Motion an Amended Complaint revising the collective definition to include the agreed definition. If this Court approves this Settlement Agreement, the Parties request that the Court also approve the collective definition agreed to by the Parties in the settlement and set forth in the Amended Complaint.

Counsel for Plaintiffs spent significant time interviewing putative collective members about Defendants' pay practices, gathering and reviewing wage records, text messages, and other documents from Plaintiff and Opt-In Plaintiffs, and identifying and evaluating possible violations of various FLSA regulations. Notably, several Putative Collective Members elected to opt into the lawsuit, while others chose to wait in light of the case being tolled and because the matter was being mediated on behalf of the entire collective.

The Parties to this matter engaged in extensive collection and exchange of time and pay records prior to mediation.  In preparation for mediation, Defendants, through its counsel, assembled and analyzed multiple sources of data relevant to an objective, reasonable assessment of the amount of unpaid overtime compensation potentially due to Plaintiffs and the Putative Collective Members, including time records and payroll records. Defendants also produced this data and underlying documentation to Plaintiffs who, through their counsel, conducted an independent review and analysis of the overtime compensation potentially owed to Plaintiffs and the Putative Collective Members by reviewing the time records provided for Plaintiff and the Opt-In Plaintiffs and comparing those time records to relevant text messages and wage records possessed by Plaintiff and Opt-In Plaintiffs to confirm the accuracy and validity of the overall data. Defendants produced a damages model for Plaintiff , Opt-In Plaintiffs, and Putative Collective Members that was independently reviewed and verified by counsel for Plaintiff.

On March 26, 2025, the Parties mediated their claims before mediator Dennis Clifford.  Prior to and during the mediation, Plaintiff and Defendants provided each other and the mediator with damages calculations for Plaintiff, the Opt-in Plaintiffs, and the Putative Collective Members based on the weekly hours and number of weeks worked by during the relevant statute of limitations period.

The Parties resolved the claims subject to this Court's approval. Mr. Clifford, who is familiar with FLSA claims from his years of employment practice and mediating complex collective actions and advised the Parties that he believes the terms of the settlement are reasonable given the competing evidence and versions of events.

## II.    <u>SETTLEMENT TERMS</u>

Plaintiff states and Defendants agree that each carries risk in litigation due to FLSA regulations and prior case law addressing similar overtime issues. To minimize the risks of further litigation and prevent the incurrence of unnecessary litigation costs, and upon the advice of experienced counsel, the Parties reached a reasonable resolution and compromise of Plaintiffs' claims, subject to the Court's approval, as set forth in the Parties' Settlement Agreement that is attached hereto as Exhibit 1.

In total, the Putative Collective Members consists of approximately 422 individuals, and this settlement was negotiated on behalf of Plaintiff and all Putative Collective Members (which include the Opt-in Plaintiffs). Based on the alleged day rate wages, there is a strong presumption in the Eleventh Circuit that the alleged weekly wages were intended to cover all hours worked and that Putative Collective Members would only be eligible for half-time for each hour of overtime worked, as opposed to time-and-a-half. Counsel for Plaintiff reviewed

Plaintiff's and Opt-In Plaintiffs' wages, time worked with the Defendants during the relevant three (3)-year time period, and the individual recorded hours for each Plaintiff and Opt-In Plaintiff to assess the accuracy of the hours and wage records of the putative collective. Those same wages and time records were assembled and compiled for all of the Putative Collective Members to assess the potential damages for the entire putative collective. Those factors allowed counsel for the Parties to calculate the range of damages for Plaintiff and each Putative Collective Action Member.

Defendants presented evidence and case law from a sister court in this circuit that could have served to deny any potential liability and/or that could potentially avoid a three-year lookback or liquidated damages. Based on the damages model for a half-time overtime rate in compliance with the day-rate regulations and case law in the Eleventh Circuit, Plaintiffs would be entitled to $806,183.74 in back-owed overtime using the half-time rate and 2-year lookback period with no liquidated damages. If Plaintiffs could prove willful or intentional behavior by Defendant, Plaintiffs would have been entitled to $957,118.60 in back-owed wages. That amount would total $1,914.237.20 with liquidated damages added under a 3-year lookback period.

Accordingly, to avoid the uncertainty of litigation, Defendants agreed to pay

and Plaintiff  agreed to accept a settlement in the amount of $1,400,000. The settlement amount includes pro-rata payments only to Putative Collective Members who sign and return a claims form ("Qualified Collective Members") for unpaid overtime and liquidated damages under the FLSA, attorneys' fees and costs, and a payment to Plaintiff in exchange for a general release of all claims related to or arising out of his employment ("General Release Payment"). This gross settlement amount is approximately 175% of the alleged back-owed overtime for a 2-year lookback and approximately 150% of the alleged back-owed overtime using a 3-year lookback period. After attorneys' fees, costs, and the General Release Payment to Plaintiff , the Putative Collective Members will have a net settlement payment amount of $819,420.00, which is more than 100% the back-owed wages under a 2-year lookback period and approximately 86% of back-owed wages under a 3-year lookback period.

The potential settlement amount allocated to Plaintiff and each Putative Collective Member for back pay and liquidated damages will be based on formula using the total number of weeks worked by all Putative Collective Members (approximately 15,368) during the relevant period (October 2, 2021 – January 31, 2025) to determine a weekly value which will then be multiplied by the number of weeks worked by Plaintiff and each Putative Collective Member from October 2,

2021 – January 31, 2025, pursuant to Paragraph 50 of the Settlement Agreement. The potential settlement amounts will only be paid to Plaintiff and Qualified Collective Members (those who submit valid and timely claim forms). The potential settlement amounts allocated to Putative Collective Members who do not submit a valid and timely claim form, will revert to Defendants.

Pursuant to the terms of the Parties' Settlement Agreement, Defendants will provide the settlement administrator with the required funds, Putative Collective Members' names and addresses, and the dates worked by Putative Collective Members. The settlement administrator will make best efforts to verify Putative Collective Members' addresses through the United States Post Office's National Change of Address ("NCOA") database, and the settlement administrator can skip trace Putative Collective Members up to two (2) times for any returned mail. Defendants agreed to look for last known emails and cell phone numbers if skip trace mailings are unsuccessful and returned. Plaintiffs will have 60 days to accept and return their claims form for his or her portion of the settlement funds, or 45 days after any re-mailing due to returned mail.

### III.    ARGUMENT AND CITATION TO AUTHORITY

#### A. Legal Standard for Approval of FLSA Settlements

In accordance with Eleventh Circuit precedent *Lynn Food Stores, Inc. v. United States,* 679 F.2d 1350, 1353 (11th Cir. 1982), the Parties request that the Court approve their settlement agreement, which is attached hereto as Exhibit 1. Should the Court approve the settlement agreement, the Parties also stipulate that this matter be dismissed with prejudice and request that the Court retain jurisdiction to enforce the settlement agreement.

In reviewing a settlement of a FLSA private claim, this Court must "scrutinize[ ] the settlement for fairness," and determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores,* 679 F.2d at 1353, 1355. "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute [,] ... the district court may approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In reviewing FLSA settlements, courts in this district "often apply a two-step approach," asking first "whether the compromise is fair and reasonable to the employee," and second "whether the compromise otherwise impermissibly frustrates implementation of the FLSA . . . ." *Anthony* 2017 WL 5639933 at *1 (citing *Dees v. Hydradry, Inc.*, 706 F. Supp.2 d 1227, 1241 (M.D. Fla. 2010)).

Factors that courts consider when evaluating whether a settlement is fair and reasonable include the following:

(1) the existence of fraud or collusion behind the settlement;

(2) the complexity, risk, expense, and likely duration of the litigation;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits;

(5) the range of possible recovery; and

(6) the opinions of the counsel.

*George v. Academy Mortgage Corp. (UT)*, 369 F. Supp. 3d 1356, 1369 (N.D. Ga. 2019). Furthermore, the fact that employees in an FLSA lawsuit are "represented by an attorney who can protect their rights under the statute" makes it "more likely" that the proposed settlement reflects "a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores*, 679 F.2d at 1354.

B. <u>The Settlement Agreement in this Case is Fair and Reasonable</u>

This lawsuit involves a bona fide dispute that the Court may allow Plaintiff, the Opt-in Plaintiffs and the Putative Collective Members in this action to settle and release their FLSA claims against Defendants. The settlement arises in an

adversarial context, with pending litigation and with all Parties represented by competent counsel with experience in litigating wage and hour claims on both an individual and collective basis, and counsel vigorously represented their clients' rights. The Parties reached the proposed settlement after months of extensive investigation, exchange of substantial information, and negotiations under the close supervision of an experienced collective action mediator.

This case presented numerous contested issues that required extensive research, investigation and discovery. Indeed, the FLSA claims asserted against Defendants involve bona fide disputes about FLSA liability and damages, and the Settlement Agreement represents a reasonable compromise of these disputed issues. In the Complaint, Plaintiff asserted a primary theory of liability that Defendants failed to pay overtime wages for day-rate employees who worked more than forty (40) hours per week.

Here, there are bona fide disputes over FLSA provisions and the amount of overtime pay each Putative Collective Member is entitled to receive. As such the settlement agreement is a fair and reasonable resolution of the bona fide dispute(s). Under these circumstances, the Parties respectfully submit that their settlement is fair and reasonable and due to be approved.

    C.  <u>The Attorney's Fees and Costs are Reasonable</u>

The settlement includes Plaintiff's counsels' attorneys' fees and costs in the gross settlement amount, which was used by Plaintiff's counsel as a tool to negotiate a higher recovery for the overall gross fund. Defendants agreed to pay the sum of $560,000.00 to counsel for Plaintiffs as attorneys' fees, plus $5,580.00 in reasonable expenses of litigation.

In reviewing a fee award, this Court has used the following factors for consideration to determine a reasonable percentage to award collective counsel:

(1) the time and labor required;
(2) the novelty and difficulty of the relevant questions;
(3) the skill required to properly carry out the legal services;
(4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the clients or the circumstances;
(8) the results obtained, including the amount recovered for the clients;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the clients; and
(12) fee awards in similar cases.

*George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1376 (N.D. Ga. 2019) (applying factors to an FLSA fee award) (quoting *Lunsfurd v. Woodforest National Bank*, 2014 WL 12740375, *11 (N.D. Ga. May 19, 2024) and *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (1991)).

Counsel for Plaintiff have substantial experience in litigating cases involving day-rate practices under the FLSA and was particularly suited for identifying potential violations under the FLSA and litigating those on behalf of the Putative Collective Members. Counsel for Plaintiff accepted this case despite significant risks for possible exemption arguments, collective certification issues, risk related to ultimate recovery, and other traditional risks of litigation.

Before and after the lawsuit was filed, counsel for Plaintiff extended considerable time investigating and researching Defendants' complex pay scheme on behalf of Plaintiff and the Putative Collective Members, was able to preserve and toll the statute of limitations on behalf of the entire collective without significant motions practice and delay, and was able to obtain an extraordinary result of 150% - 175% of back-owed wages under both a 3-year and 2-year lookback period.

After attorneys' fees, costs, and a General Release Payment to Plaintiff , the Qualified Collective Members who return a claims form will receive more than 100% of their back-wages under a 2-year lookback period and approximately 86% of back-owed wages under a 3-year lookback period. Counsel for Plaintiff assumed the risks of this case without any requirement of payment for fees by Plaintiff and were, as a result, precluded for other employment. Counsel for Plaintiff will be

assisting the settlement administrator and available to the Putative Collective Members during the settlement administration process, which is expected to continue to take considerable time and resources over the next several months.

Accordingly, in light of the significant recovery on behalf of the Putative Collective Members, counsel for Plaintiff and the Opt-in Plaintiffs believe that the attorneys' fees to be paid as a result of this settlement is justified and appropriate. *George*, 369 F. Supp. 3d at 1379 (finding 30% - 40% contingency to be within standard rates and approving attorneys' fees when "[g]iven the net recovery of full overtime backpay for the maximum available statutory limitations periods and close to full damages on potential penalties, liquidated damages and interest, in the face of significant litigation risks faced by the Settlement Collective here, the Settlement represents an extraordinary result."). In fact, the fees sought by Plaintiff's Counsel are within the 33.33% to 40% range that courts in the Eleventh Circuit regularly approve. *See e.g., Sanders v. OS Restaurant Services, LLC*, No. 1:21-cv-04778-SEG, (N.D. Ga., Feb. 22, 2024) (approving a 40% fee that became an effective 38.8% fee after expenses from the gross fund based on a result where plaintiffs received 89% of their 2-year lookback wages); *Nimo v. Homeland Patrol Corp.*, No. 17-24080, 2018 WL 11447964 (S.D. Fla. Jan. 30, 2018) (approving 40% in FLSA case); *Brenowitz v. Implant Seminars, Inc. et al.*, 2017 WL 3438879,

at *4 (S.D. Fla. Aug. 10, 2017) (approving 40% fee); *Mansfield v. Castaways Backwater Cafe, Inc.*, No. 2:07-cv-401-FtM-29SPC, 2008 U.S. Dist. LEXIS 63222, at *3 (M.D. Fla. Aug. 4, 2008) (approving 40% fee); *Wreyford v. Citizens for Transp. Mobility, Inc.,* 2014 WL 11860700, at *1 (N.D. Ga. Oct. 16, 2014) (approving a one-third fee); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement.").

Contingency fee agreements between 33% to 40% are routinely approved around the country in light of the risk plaintiffs' counsel takes in cases and exhausts in pursuing claims for collective actions. S*ee also*, *Hamilton v. EnerSafe, Inc.*, No. 5:15-CV-1003-JKP, 2020 WL 11891329, at *2 (W.D. Tex. Feb. 7, 2020) (approving a 40% contingency fee on the gross settlement negotiated and agreed to by the parties); *Miles v. BKP Inc.*, No. 18-CV-01212-PAB-MEH, 2024 WL 2724007, at *4 (D. Colo. May 28, 2024) (approving 38% contingency); *Heitzman v. Calvert's Express Auto Serv. & Tire, LLC*, No. 22-CV-2001-JAR-ADM, 2023 WL 2117805, at *5 (D. Kan. Feb. 17, 2023) (approving 40% contingency); *Jackson v. U.S. Bancorp*, No. 20-2310-EFM, 2022 WL 744693, at *4 (D. Kan. Mar. 11, 2022) (approving an award of 40% of a gross settlement amount); *Price v. Devon Energy Corp.*, No. 2:20-cv-00316-KWR-GJF, 2021 WL 2312537, at *1

(D.N.M. May 24, 2021) (approving attorney's fees at the rate of 40%); *Faulkner v. Ensign United States Drilling Inc.*, No. 16-CV-03137-PAB-KLM, 2020 WL 550592, at *5 (D. Colo. Feb. 4, 2020) (noting that 40% contingency retainer where "counsel runs a significant risk of nonpayment weights in favor of the reasonableness of a requested fee award"); Swanson, 2019 WL 4858453, at *3 (approving 36% contingency); *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884, 2013 WL 6022972 (D. Colo., Nov. 13, 2013) (approving 39% of common fund); *Behavioral Health, Inc.*, CV 20-2986 PJM, 2021 WL 2141542, at *1 (D. Md. May 26, 2021) (approving a percentage award from fund as preferred "because it ties the attorneys' awards to the overall result achieved rather than the hours expended by the attorneys").

Thus, Plaintiff respectfully request that this Court approve the fee for counsel as agreed to in settlement by the Parties. Defendants consent to this request.

### D. Plaintiff Craig's General Release Payment is Fair and Reasonable

Plaintiff Craig also agreed to release any and all other claims or potential claims arising out of his employment in exchange for a payment in the amount of $15,000.00. This Parties agree this is a fair and reasonable payment for the additional claims released by Plaintiff Craig alone.

IV.    **CONCLUSION**

The Parties acknowledge and agree that the terms of the Settlement Agreement constitute a fair and reasonable settlement of the pending FLSA claims. Therefore, Plaintiff respectfully moves for entry of an Order, ordering the following:

(1) Approving the Parties' settlement of the instant disputed claims as fair and reasonable;

(2) That this Court appoint Simpluris as the settlement administrator to oversee administration of this settlement;

(3) That this Court approve the notice of settlement to be mailed to the Putative Collective Members as presented in the Settlement Agreement under the correct entity, Red Oak Sanitation, LLC;

(4) That this Court dismiss this case with prejudice but retain jurisdiction to enforce the terms of the settlement agreement; and

(5) Any other relief that this Court deems just and appropriate.

For the Court's convenience, Plaintiff has attached hereto as **Exhibit 2** a proposed order of approval of this settlement.

Respectfully submitted this 7th day of May, 2025.

> */s/ J. Daniel Cole*
> J. Daniel Cole
> Georgia Bar No. 450675
> dcole@pcwlawfirm.com
> Evan P. Drew
> Georgia Bar No. 747993
> edrew@pcwlawfirm.com
>
> PARKS, CHESIN & WALBERT,
> P.C.
> 1355 Peachtree St NE, Suite 2000
> Atlanta, GA  30309
> Telephone:  (404) 873-8000
> Facsimile:  (404) 873-8050
> *Attorneys for Plaintiffs*

## **<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u>**

Pursuant to Local Rule 7.1, I hereby certify that the foregoing was prepared

in one of the font and point selections approved by the Court in Local Rule 5.1

(Times New Roman, 14 point).

*/s/ J. Daniel Cole*
J. Daniel Cole
Georgia Bar. No. 450675

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, I electronically filed the foregoing

**CONSENT MOTION TO APPROVE SETTLEMENT AND DISMISS WITH**

**PREJUDICE** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to all attorneys of record.


*/s/ J. Daniel Cole*
J. Daniel Cole
Georgia Bar. No. 450675